1

2

3

4

5

6            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON

7    ISAAC JOSEPH EMERY,

8            Plaintiff,                          No.  1:16-CV-03085-RHW

9            v.

10                                               **ORDER GRANTING**
     NANCY A. BERRYHILL                          **DEFENDANT'S MOTION FOR**
11   (PREVIOUSLY CAROLYN W.                      **SUMMARY JUDGMENT**
     COLVIN), Acting Commissioner of
12   Social Security,[1]

13           Defendant.

14          Before the Court are the parties' cross-motions for summary judgment, ECF

15   Nos. 13 & 14. Mr. Emery brings this action seeking judicial review, pursuant to 42

16   U.S.C. § 405(g), of the Commissioner's final decision, which denied his

17   application for Supplemental Security Income under Title XVI of the Social

18   Security Act, 42 U.S.C §§ 1381-1383F. After reviewing the administrative record

19   and briefs filed by the parties, the Court is now fully informed. For the reasons set

20   ---
     [1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule
     25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the
     defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

**DENIES** Mr. Emery's Motion for Summary Judgment.

## I.    Jurisdiction

Mr. Emery protectively filed for Supplemental Security Income on

December 21, 2011. AR 14, 32, 71. His alleged onset date is August 1, 1995. AR

14, 32-33, 71, 86. Mr. Emery's application was initially denied on March 29, 2012,

AR 44-47, and on reconsideration on May 3, 2013, AR 51-52.

A hearing with Administrative Law Judge ("ALJ") Laura Valente occurred

on June 17, 2014. AR 216-53. On June 27, 2014, the ALJ issued a decision finding

Mr. Emery ineligible for disability benefits. AR 14-29. The Appeals Council

denied Mr. Emery's request for review on March 31, 2016, AR 5-8, making the

ALJ's ruling the "final decision" of the Commissioner.

Mr. Emery timely filed the present action challenging the denial of benefits,

on May 11, 2016. ECF No. 3. Accordingly, Mr. Emery's claims are properly

before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

1    U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

2    under a disability only if the claimant's impairments are of such severity that the

3    claimant is not only unable to do his previous work, but cannot, considering

4    claimant's age, education, and work experience, engage in any other substantial

5    gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

6    1382c(a)(3)(B).

7        The Commissioner has established a five-step sequential evaluation process

8    for determining whether a claimant is disabled within the meaning of the Social

9    Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

10   *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

11       Step one inquires whether the claimant is presently engaged in "substantial

12   gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

13   activity is defined as significant physical or mental activities done or usually done

14   for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

15   substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§

16   404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

17       Step two asks whether the claimant has a severe impairment, or combination

18   of impairments, that significantly limits the claimant's physical or mental ability to

19   do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

20   impairment is one that has lasted or is expected to last for at least twelve months,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

1  and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 &

2  416.908-09. If the claimant does not have a severe impairment, or combination of

3  impairments, the disability claim is denied, and no further evaluative steps are

4  required. Otherwise, the evaluation proceeds to the third step.

5       Step three involves a determination of whether any of the claimant's severe

6  impairments "meets or equals" one of the listed impairments acknowledged by the

7  Commissioner to be sufficiently severe as to preclude substantial gainful activity.

8  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

9  20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or

10 equals one of the listed impairments, the claimant is *per se* disabled and qualifies

11 for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the

12 fourth step.

13      Step four examines whether the claimant's residual functional capacity

14 enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) &

15 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is

16 not entitled to disability benefits and the inquiry ends. *Id.*

17      Step five shifts the burden to the Commissioner to prove that the claimant is

18 able to perform other work in the national economy, taking into account the

19 claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

20 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 4

1    burden, the Commissioner must establish that (1) the claimant is capable of

2    performing other work; and (2) such work exists in "significant numbers in the

3    national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

4    676 F.3d 1203, 1206 (9th Cir. 2012).

5                    ### III.    Standard of Review

6           A district court's review of a final decision of the Commissioner is governed

7    by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the

8    Commissioner's decision will be disturbed "only if it is not supported by

9    substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144,

10   1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a

11   mere scintilla but less than a preponderance; it is such relevant evidence as a

12   reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

13   *Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

14   1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining

15   whether the Commissioner's findings are supported by substantial evidence, "a

16   reviewing court must consider the entire record as a whole and may not affirm

17   simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

18   *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

19   F.2d 498, 501 (9th Cir. 1989)).

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.   Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Mr. Emery was 19 years old at the time of his hearing. AR 32, 71. He attended high school through the tenth (AR 144-46, 178, 181) or eleventh grade (AR 21, 87, 184, 222), and he has attempted to obtain his diploma by working "online" (AR 178). Mr. Emery is able to communicate in English. AR 28, 180. The ALJ found that Mr. Emery suffers from probable

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

1    learning disorder, fetal alcohol effects, separation anxiety, asthma, and depression.

2    AR 16-17. Mr. Emery does not have any relevant previous work history. AR 23,

3    86-87, 179, 181, 184, 225, 236.

4                    **V.    The ALJ's Findings**

5           The ALJ determined that Mr. Emery was not under a disability within the

6    meaning of the Act from December 21, 2011, the date the application was filed.

7    AR 29.

8           **At step one**, the ALJ found that Mr. Emery had not engaged in substantial

9    gainful activity since December 21, 2011 (citing 20 C.F.R. § 416.971 *et seq.*). AR

10   16.

11          **At step two**, the ALJ found Mr. Emery had the following severe

12   impairment: probably learning disorder (citing 20 C.F.R. § 416.920(c)). AR 16-17.

13          At **step three**, the ALJ found that Mr. Emery did not have an impairment or

14   combination of impairments that meets or medically equals the severity of one of

15   the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 17-21.

16          At **step four**, the ALJ found Mr. Emery had the residual functional capacity

17   to perform a full range of work at all exertional levels with these non-exertional

18   limitations: he has sufficient concentration to understand, remember and carry out

19   simple repetitive tasks in the unskilled category; he can maintain attention and

20   concentration in two-hour increments for simple repetitive work; he can work

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

superficially and occasionally with the general public; he can interact occasionally with supervisors and with occasional interaction is likely to be able to respond appropriately to supervisor criticism; he can adapt to simple workplace changes as would be required for simple repetitive work; and he can make workplace goals as required for work involving simple repetitive tasks work. AR 21.

At **step five**, the ALJ found that, in light of Mr. Emery's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. AR 28-29.

## VI.    Issues for Review

Mr. Emery argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) finding that Mr. Emery's ADHD is not a severe medically-determinable impairment at step two of the sequential process; and (2) finding that Mr. Emery's learning disorder does not meet listing 12.05(C) at step three.

## VII.    Discussion

### A. The ALJ Erred in Part at Step Two.

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)). A diagnosis from an "acceptable medical source," such as a licensed physician or certified psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 416.913(a).

The ALJ found Mr. Emery's alleged attention deficit-hyperactive disorder ("ADHD") to not be a severe medically determinable impairment at step two of the sequential evaluation process. AR 17. The ALJ stated that she did not find a firm or conclusive diagnosis of ADHD by a qualified medical provider in the record. *Id*. Mr. Emery asserts that the ALJ erred by not finding his alleged ADHD to be a severe medically determinable impairment.

In May 2007, treating child psychiatrist Moataz El Refaie, M.D., included a current diagnosis for Mr. Emery of ADHD, predominately hyperactive-impulsive type. AR 141. Additionally, reviewing state agency psychological consultant Alex Fisher, Ph.D., noted medically determinable impairment diagnosis of ADD/ADHD. AR 37. Furthermore, Mr. Emery was prescribed Adderall to treat his

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

1   ADHD. AR 108, 142. The record is repeat with additional references to his

2   diagnosis of ADHD. Mr. Emery's academic records state that he was diagnosed

3   with ADHD. AR 144. Consultative examiner Jay Toews, Ed.D., stated, under

4   "diagnostic impression," a probable history of ADHD. AR 195. Clinical

5   psychologist Emma Billings, Ph.D., noted a reported diagnoses of ADHD. AR 181.

6   Finally, examining source Mary Pellicer, M.D., included a clinical impression of

7   "mental health issues including ADHD." AR 187.

8        Importantly however, a diagnosis itself does not equate to a finding of

9   severity. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001) (plaintiff

10   has the burden of proving this impairment or their symptoms affect her ability to

11   perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d 881, 885 (9th

12   Cir. 2011). Under step two, an impairment is not severe if it does not significantly

13   limit a claimant's ability to perform basic work activities. *Edlund*, 253 F.3d at

14   1159 (citing 20 C.F.R. § 404.1521(a)(b)). The ALJ did not err by not finding Mr.

15   Emery's ADHD to be a severe impairment at step two because there is substantial

16   evidence in the record that Mr. Emery's ADHD does not significantly limit his

17   ability to do basic work activities.

18        The ALJ noted that in May 2007 Dr. Refaie reported that Mr. Emery was

19   alert and oriented, and exhibited minimal impairment in his attention and

20   concentration, he had goal-directed thought process, and intact judgment and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

insight. AR 140-141. Dr. Refaie also noted that Mr. Emery's grades had improved

from Fs to Bs and Cs. *Id.*

In March 2012, Dr. Toews, an examining psychologist, stated that Mr.

Emery evinced no significant cognitive, mood or affective barriers to learning or

employment. AR 26, 195. Dr. Toews noted Mr. Emery was immature and inpatient

but had no difficulty in comprehending or remembering test instructions or test

items, and found Mr. Emery capable of remembering multi-step instructions,

interacting with others and of following directions. AR 195. It was noted that Mr.

Emery functions very well, he completed forms on his own, is fully independent

for basic self-care, he has a full complement of independent living skills, and he

requires no prompt or cures for ADLs. AR 192. Significantly, Dr. Toews found

Mr. Emery's motivation was questionable, noting that Mr. Emery himself stated he

has no significant deficits or disabilities but needs money, he also learns well and

completes assignment when he attends school but has a record of poor attendance,

and he is poorly motivated and cognitively lazy. AR 26-27, 191, 195. Dr. Toews

also stated that Mr. Emery "evidences no significant cognitive, mood or affective

barriers to learning or employment." AR 195. Finally, Dr. Toews assessed a Global

assessment of Functioning between 65–70, indicating only mild to moderate

symptoms or difficulties in social, occupational or school functioning, but

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11**

1    generally functioning pretty well, with some meaningful interpersonal

2    relationships. AR 26, 195.

3        The ALJ noted that in March 2012, Mr. Emery reported he had stopped

4    taking ADHD medications and feels better off without it. AR 17, 183. Also, in

5    March 2012, Mr. Emery stated he had a history of ADHD in elementary school but

6    quit taking medications 3-4 years ago. AR 191-195. In March 2013, Dr. Billings,

7    noted that Mr. Emery admitted he has not taken any medications since he was a

8    freshman in high school and Dr. Billings noted that Mr. Emery is no longer

9    receiving any treatment for ADHD. AR 179-80, 182.

10        Mr. Emery's school records are also mentioned by the ALJ, indicating Mr.

11    Emery is not as limited as he alleges, and he stopped going to school due to

12    motivational issues. AR 24. The ALJ notes that in November 2009, Mr. Emery's

13    teachers stated that he is able to complete the required work when he attends

14    classes and is able to succeed if he improves his attendance. AR 24, 144-45. Mr.

15    Emery's math teacher noted that Mr. Emery had done well, scoring 95 percent on

16    his first test and 100 percent on his second test, but missed class 19 times in the

17    first trimester. AR 24, 153-54. His teachers state that he is a "very sharp kid" and

18    he "does a great job when he is here and applies himself," and his major issue is

19    his attendance. AR 24, 152.

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12**

1         Furthermore, because Mr. Emery was found to have at least one severe

2 impairment, this case was not resolved at step two. Generally any error in the

3 ALJ's finding at step two is harmless, if all impairments, severe and non-severe,

4 were considered in the determination Mr. Emery's residual functional capacity. *See*

5 *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that a failure to

6 consider an impairment in step two is harmless error where the ALJ includes the

7 limitations of that impairment in the determination of the residual functional

8 capacity). In assessing the RFC, an ALJ considers the claimant's impairments,

9 regardless of whether or not they are severe, based on all of the relevant medical

10 evidence and other evidence. 20 C.F.R. § 416.945(a)(2)-(3). "[A]n ALJ's

11 assessment of a claimant adequately captures restrictions related to concentration,

12 persistence, or pace where the assessment is consistent with restrictions identified

13 in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th

14 Cir. 2008). Here, the ALJ's RFC finding properly incorporated the limitations

15 identified by medical and other sources, including those related to pace and

16 repetitive work, and other mental limitations regarding attention, concentration,

17 adaption, and interaction that are attributable to Mr. Emery's impairments,

18 including his ADHD. AR 21, 23, 25-27, 32-42, 144, 181.

19         Accordingly, the ALJ erred in determining that Mr. Emery's alleged ADHD

20 was not a medically determinable impairment, but the ALJ did not err in not

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

1    finding Mr. Emery's ADHD a severe impairment at step two. Because Mr.

2    Emery's ADHD is not severe and all of Mr. Emery's impairments and limitations

3    were considered in the determination of Mr. Emery's residual functional capacity,

4    any error is the ALJ's finding at step two is harmless. *See Lewis*, 498 F.3d at 911.

5    **B. The ALJ Did Not Err in Finding That Mr. Emery Did Not Meet Listing**

6    **12.05(C).**

7         **a. Legal Standard.**

8         Mr. Emery argues that he is presumptively disabled at step three because he

9    meets or exceeds the criteria of Listing 12.05(C).

10        A claimant is presumptively disabled and entitled to benefits if he or she

11   meets or equals a listed impairment. To meet a listed impairment, a disability

12   claimant must establish that his condition satisfies each element of the listed

13   impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*

14   *v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). To equal a listed impairment, a

15   claimant must establish symptoms, signs, and laboratory findings at least equal in

16   severity and duration to each element of the most similar listed impairment.

17   *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526).

18        The structure of Listing 12.05(C) is "unique" in that it "allows a claimant to

19   be found per se disabled without having to demonstrate a disabling, or even severe,

20   level of mental functioning impairment," which sometimes leads to "curious

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14**

result[s]." *Abel v. Colvin*, 2014 WL 868821, at *4 (W.D. Wash. 2014) (internal

citation and quotation marks omitted). "The structure of the listing for intellectual

disability (12.05) is different from that of the other mental disorders listings.

Listing 12.05 contains an introductory paragraph with the diagnostic description

for intellectual disability. It also contains four sets of criteria (paragraphs A

through D). If [a claimant's] impairment satisfies the diagnostic description in the

introductory paragraph and any one of the four sets of criteria, we will find that

[the claimant's] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Thus, a claimant must meet the standard set forth in the introductory

paragraph and at least one of the four listed criteria. *Id*. 20 C.F.R. Pt 404, Subpt. P,

App. 1, Listing 12.05 reads, in relevant part:

> Intellectual disability refers to significantly subaverage general
> intellectual functioning with deficits in adaptive functioning initially
> manifested during the developmental period; i.e., the evidence
> demonstrates or supports onset of the impairment before age 22.
>  The required level of severity for this disorder is met when the
> requirements in A, B, C, or D, are satisfied . . .

> C. A valid verbal, performance, or full IQ of 60 through 70 and a
> physical or other mental impairment imposing an additional and
> significant work-related limitation of function.

In sum, in order to be considered presumptively disabled under Listing

12.05(C) based on "intellectual disability," a claimant must present evidence of:

(1) "significantly subaverage general intellectual functioning with deficits in

adaptive functioning" which initially manifested before the age of 22 (i.e., "during

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** ~ 15

1    the developmental period"); (2) a "valid verbal, performance, or full scale IQ of 60

2    through 70"; and (3) "a physical or other mental impairment imposing an

3    additional and significant work-related limitation of function." 20 C.F.R. Part 404,

4    Subpart P, Appendix 1, § 12.05(C*); see Kennedy v. Colvin*, 738 F.3d 1172, 1174

5    (9th Cir.2013).

6          It is important to note that, at step three of the sequential evaluation process,

7    it is still the claimant's burden to prove that his impairment meets or equals one of

8    the impairments listed in 20 C.F.R. § 404, Subpart P. *Oviatt v. Com'r of Soc. Sec.*

9    *Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071,

10   1074–75 (9th Cir.2007); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005).

11         Here, the ALJ found Mr. Emery does not meet Listing 12.05(C) because (1)

12   he does not have a valid verbal, performance, or full scale IQ of 60 through 70, and

13   (2) he does not have a physical or other mental impairment imposing an additional

14   and significant work-related limitation of function. AR at 18. The Court must now

15   examine whether the ALJ's conclusion that Mr. Emery did not satisfy Listing

16   12.05(C) is supported by substantial evidence and free from legal error.

17             **b.  Deficits in Adaptive Functions Prior to Age 22.**

18         In the case at hand the ALJ does not assert that Mr. Emery does not meet the

19   first prong of 12.05(C), having "significantly subaverage general intellectual

20   functioning with deficits in adaptive functioning" which initially manifested before

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 16**

the age of 22. To satisfy the introductory paragraph of Listing 12.05(C) a claimant

must demonstrate "significantly subaverage general intellectual functioning with

deficits in adaptive functioning initially manifested during the developmental

period; i.e., the evidence demonstrates or supports onset before age 22." Listing

12.05(C).

A showing of early onset adaptive functioning deficits for purposes of

Listing 12.05(C) may be made by a claimant by the use of relevant circumstantial

evidence, such as difficulties with reading and writing, attendance of special

education classes, and dropping out of high school prior to graduating. *Jones v.*

*Colvin*, 149 F. Supp. 3d 1251, 1260–61 (D. Or. 2016)(claimant attended special

education classes, was reading at the eighth grade level when she was 18 years old,

did not have to complete any homework, was provided significant accommodation

at high school but was only able to achieve a modified diploma, took numerous

tries to pass her driver's license, and lives under the care of her parents); *See also,*

*Gomez v. Astrue*, 695 F.Supp.2d 1049, 1061 (C.D.Cal. 2010) (inference of adaptive

functioning deficits prior to age 22 when individual was enrolled in special

education courses).

The record shows that Mr. Emery had a learning disorder that resulted in Mr.

Emery's deficits in adaptive functioning manifested prior to age 22. Mr. Emery

dropped out of school in the tenth or eleventh grade and required special education

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17**

courses in reading, writing, and math during his schooling. AR 144-46, 178, 222.

When Mr. Emery was in the tenth grade, his reading and writing skills were at the

sixth grade level, and his math skills were at the sixth to seventh grade level. AR

145, 153. Dr. Toews indicated that Mr. Emery would have "difficulty keeping up

with his peers in a wide variety of situations that require thinking and reasoning

abilities." AR 196. Mr. Emery's special education records indicate a significant

gap when compared to his age-level peers. AR 22, 145.

While the severity of Mr. Emery's impairments are belied in the record by

his poor school attendance and lack of motivation, the record does still

demonstrate, and the ALJ does not contest, that Mr. Emery's deficits in adaptive

functioning manifested prior to age 22. As such, the Court finds that the

introductory requirement of Listing 12.05(C) is met.

### c.  IQ Score Validity.

The first element of the listing actually at issue is whether or not Mr. Emery

provided a valid IQ score meeting the requirements of the listing.

A finding of intellectual disability under Section 12.05(C) requires "A valid

verbal, performance, or full IQ of 60 through 70." 20 C.F.R. Pt 404, Subpt. P, App.

1, Listing 12.05. Section 12.00(D) of the Appendix provides that "where more than

one IQ is customarily derived from the test administered ... the lowest of these is

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** ~ 18

used in conjunction with listing 12.05." *Williams v. Shalala*, 35 F.3d 573 (9th Cir. 1994) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)).

The Ninth Circuit directs that an ALJ can decide that an IQ score is invalid. *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008). In *Thresher*, the Ninth Circuit stated that the "regulations' inclusion of the word 'valid' in Listing 12.05(C) makes the ALJ's authority clear." *Id*. Thus, an IQ score may be rejected as an invalid score by an ALJ. However, the Ninth Circuit also noted that it had "never decided what information is appropriately looked to in deciding validity," but that other circuit courts have said that a score can be questioned on the basis of "other evidence," but without explaining "exactly how other evidence impacts the validity of the score itself," and that other courts require "some empirical link between the evidence and the score." *Id*. at 475 n. 6 (citations omitted). "*Thresher* left that issue unresolved, but it suggests, at a minimum, that an ALJ should not find that 'other evidence' renders an IQ invalid without explaining how that evidence impacts the validity of the score." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010). Decisions from other courts indicate that the ALJ may rely on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score. *Jones v. Colvin*, 149 F. Supp. 3d 1251, 1258 (D. Or. 2016).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19**

In March 2012, Mr. Emery was administered a WAIS-IV IQ test, through which it was determined that Mr. Emery has a verbal IQ of 70. AR 193. Dr. Toews, who administered the IQ test, noted that the "[t]est results are considered valid." *Id*. Dr. Toews indicated this score is consistent with Mr. Emery's academic performance, noting that an individual with low verbal abilities often has difficulty in school because the majority of educational instruction involves verbal learning. AR 193-94, 196-97. Dr. Toews further noted that Mr. Emery's verbal reasoning abilities are in the borderline range and above those of only 2% of his peers. AR 197. Notably, Dr. Toews also directed that Mr. Emery's poor verbal learning is made worse due to his absenteeism from school. AR 194. In his summary, Dr. Toews noted that during testing Mr. Emery was immature and impatient to complete testing, he is poorly motivated, he appears to be cognitively lazy, and "he evidences no significant cognitive, mood or affective barriers to learning or employment." AR 195. Importantly, a verbal IQ score of 70 is within the 12.05(C) requirements; and while Dr. Toews did note Mr. Emery's difficulties with motivation, immaturity, and impatience Dr. Toews did not state that this negatively affected his overall performance on the WAIS-IV IQ test and he did not directly state any doubt as to the ultimate validity of the score. AR 193-95.

The ALJ does not provide detailed reasoning for rejecting the validity of the IQ score. AR 18. She states that Mr. Emery does not have a valid verbal,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 20

performance, or full scale IQ of 60 through 70, and notes that Mr. Emery's full scale IQ score was 77. AR 18. The ALJ also states that she "discount[ed] the WAIS results to some extent as Dr. Toews does because, according to Dr. Toews, the poor results is [sic] based on the claimant's lack of motivation and not a true mental health impairment." AR 27

The Court finds the reasons provided by the ALJ to be insufficient. As noted above, the lowest IQ derived from the test is used in conjunction with listing 12.05. *Williams*, 35 F.3d at 573 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)). So while Mr. Emery did have a full scale IQ score of 77, his verbal score was 70. AR 193. In addition, Listing 12.05(C) only requires one score fall within the listing range, not all of the scores.[2] The fact that Mr. Emery only had one score within the listing range does not affect the ultimate determination. While the examiner does note that Mr. Emery lacks motivation, he does not question the validity of the overall outcome. Furthermore, there is no contrary medical opinion to that of Dr. Toews, thus his determination may not be rejected unless "clear and convincing" reasons are provided. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). The ALJ failed to offer clear and convincing reasons for disregarding Dr. Toews determination of the validity of Mr. Emery's verbal IQ score of 70.

---

[2] 20 C.F.R. § Pt. 404, Subpt. P, App. 1 Listing 12.05(C) requires a "valid verbal, performance, *or* full scale IQ of 60 through 70." (emphasis added).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21**

The Court finds the ALJ's determination that there is no valid IQ score is not supported by substantial evidence. *Hill*, 698 F.3d 1144, 1158-59. Thus, the Court concludes that Mr. Emery provided a valid verbal IQ score, and the Court concludes that Mr. Emery has satisfied the second element of Listing 12.05(C). However, this error is harmless because, as stated below, Mr. Emery failed to satisfy the third and final element of Listing 12.05(C), a physical or other mental impairment imposing an additional and significant work-related limitation of function.

### d. A Physical or Other Mental Impairment Imposing and Additional and Significant Work Related Limitation of Function.

The second element of the listing actually at issue is whether or not Mr. Emery has a physical or other mental impairment imposing an *additional and significant* work-related limitation of function. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C) (emphasis added).

An impairment imposes an additional and significant work related limitation of function when "its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir.1987); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A) (for purposes of Listing 12.05(C) an additional impairment "significantly limits [claimant's] physical or mental ability to do basic work activities" if it "is a 'severe' impairment [ ], as defined in [20 C.F.R.] §§ 404.1520(c) and 416.920(c)").

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 22

1   This, in other words, is the definition of a "severe" impairment. However, the ALJ

2   need not recite or incant certain "magic words" so long as the reviewing court can

3   draw specific and legitimate inferences from her decision. *See Magallanes v.*

4   *Bowen*, 881 F.2d 747, 755 (9th Cir.1989).

5       To qualify under Listing 12.05(C), a claimant bears the burden of

6   demonstrating that his impairment imposes "an additional and significant work-

7   related limitation of function." 20 C.F.R. Pt. 404, Subpt. P., App. 1. Here, Mr.

8   Emery very briefly argues that this element of the listing is met because, Mr.

9   Emery contends, he has the severe impairment of ADHD, and the ALJ's finding to

10  the contrary is erroneous. However, this argument has already been addressed

11  above and found invalid. As stated above, the ALJ did not determine Mr. Emery's

12  ADHD was a severe impairment and the Court found this determination is not in

13  error. As Mr. Emery's ADHD is not a severe impairment it does not have more

14  than a minimal effect on his ability to perform basic work activities. Mr. Emery

15  has not established a physical or other mental impairment imposing an additional

16  and significant work-related limitation of function. Thus, the requirements of

17  Listing 12.05(C) are not met.

18      The Court's review of the record confirms that the ALJ's determination that

19  Mr. Emery's impairment does not fall within the scope of Listing 12.05(C) is

20  supported by substantial evidence. Importantly, in determining whether substantial

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 23

evidence exists, we look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). However, on review, the Court does not retry the case or alter credibility determinations and factual findings; if the evidence is susceptible to more than one rational interpretation, the decision of the ALJ *must* be upheld. *Id.*; *Moncada v. Chater*, 60 F.3d 521, 524–25 (9th Cir. 1995) (emphasis added). As such, the Court concludes that a finding in Mr. Emery's favor is not warranted.

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

3.  **Judgment shall be entered in favor of Defendant** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 24th day of February, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 24